

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH D. BLACK, # 283-6537, | * |
| Plaintiff | * |
| v | *    Civil Action No. RDB-17-979 |
| EASTERN CORRECTIONAL INSTITUTION,<br>LT. WILLIAM CLAYTON,[1]<br>C.O. II ADRIAN CHRISTOPHER,<br>WARDEN RICKY FOXWELL,<br>OFFICER DANIEL ARNDT,[2] | * |
| Defendants | * |

***

## MEMORANDUM OPINION

Plaintiff Joseph Black filed a 42 U.S.C. § 1983 action seeking money damages against Eastern Correctional Institution ("ECI")[3] and several of its employees. ECF No. 1. Black claims that Officers Clayton and Arndt violated his constitutional rights by assaulting him during a March 14, 2017 strip search conducted in a location that was visible by others, including female corrections officers. ECF No. 1 at 3; ECF No. 13 at 3; ECF No. 34. Black claims that Officer

---

[1] The Clerk shall amend the docket to reflect that the correct name of Defendant "Clayton Williams" is William Clayton, and CO II Christopher's first name is Adrian.

[2] Warden Foxwell was named a Defendant in Black's first Motion to Amend the Complaint. ECF 13, p. 1. Defendant Arndt, initially identified in the first Motion to Amend as "John Doe," was named in Black's second Motion to Amend. ECF No. 34. The Motions to Amend were granted because Foxwell and Arndt were aware of Black's claims against them and responded to them as part of their collective dispositive Motion. ECF No. 40, p. 2. Counsel is reminded to enter an appearance on their behalf.

[3] ECI is not a "person" and therefore is not a proper Defendant for a civil rights claim. *See* 42 U.S.C. § 1983 (creating a private right of action against "[e]very person who" deprives another of his or her Constitutional rights). Accordingly, ECI is dismissed.

Christopher[4] then retaliated against him for complaining about the strip-search incident by discarding his mail, preventing him from doing certain activities like taking showers, withholding food, mail, and commissary purchases, and placing him in danger by telling other inmates that Black was cooperating with law enforcement officers. ECF No. 1 at 3-4; ECF No. 13 at 3. Black also claims that Warden Foxwell failed to address his complaints about Christopher's retaliation.

Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 27. Consonant with the dictates of *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), Black was notified the Motion could be treated as a Motion for Summary Judgment and he was entitled to file an opposition with supporting material. ECF No. 28. Black has filed a Response in Opposition. ECF No. 31.

Defendants' Motion is ripe for disposition. After considering the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2016), as a hearing is unnecessary. For the reasons that follow, the Court GRANTS the Motion to Dismiss as to ECI and DENIES the Motion to Dismiss as to all claims against all other Defendants; GRANTS the Motion for Summary Judgment as to Foxwell; and DENIES the Motion for Summary Judgment as to Clayton, Christopher and Arndt.

### Standard of Review

<u>Motion to Dismiss</u>

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the

---

[4] Plaintiff initially named Officer Fisher in connection with this claim, but he has since voluntarily dismissed Fisher as a Defendant. ECF No. 1 at 3; ECF No. 35; ECF No. 40.

facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 439 (4th Cir. 2011); *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005), citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). In doing so, this Court has an obligation to liberally construe a self-represented plaintiff's pleadings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must assume the factual allegations to be true. *Id.* at 93, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented."). Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and require "more than labels and conclusions," as "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555.

A complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). Black's allegations against Defendants Clayton, Arndt, and Foxwell survive dismissal under this standard as a matter of law.[5] As noted, the claim as to Eastern Correctional Institution must be dismissed as it is not a proper party in a §1983 suit.

## Summary Judgment

Defendants' motion, styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56, implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary

---

[5] Defendants' generic assertion that they are entitled to qualified immunity is unavailing. ECF No. 27-1 at 28-29. The use of excessive force to maliciously and sadistically cause harm to prisoners has long been prohibited. *See Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). Similarly, a prisoner's claim that prison officials have retaliated against him for engaging in protected conduct, grounded in the First Amendment, is cognizable and well-established. *See Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977).

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive motion, their motion shall be treated as one for summary judgment.

Summary judgment is governed by Rule 56(a), which provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In analyzing a summary judgment motion, the Court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Although Black's submissions are liberally construed, *Erickson*, 551 U.S. at 94, this Court must also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## The Parties' Submissions

A.  Plaintiff's Claims

Black asserts that on March 14, 2017, correctional officers at ECI planned to move him from his cell to administrative segregation housing based on disciplinary charges issued by Defendant Clayton. ECF No. 27-6 at 8-9; ECF No. 27-8 at 10. Black alleges that, at the start of the moving process, Clayton

> [C]ame to my cell and advised me that this is a shake down then he took me and my cell buddy from out [of] our cell and put us in the top day room in[ ]front of passing inmates and female officers and male officers then told us to strip take off all our clo[thes.] [T]hen as I was doing as I was told I was then . . . advised me [sic] to separate my private parts then put my hands inside my mouth and move my fingers around then I was told to drop open my butt using both hands and then show both bottom of my feet[.] Also I was told to cough twice[.] Now after I did everything that I was told to do[,] now once more I am being told to bend over and hold open my butt hole[.] I said I've already done that then Officer Clayton and his partner[, who Plaintiff subsequently identified as Officer Arndt (ECF No. 34),] attacked me from behind and started chocking [sic] me and screaming open your butt now[.] Then Officer Clayton stuck his hand up in my rectum with so much force causing me so much pain that I just gave up while he sexually assault[ed] me till he [saw there] was nothing in my rectum or on my person.

ECF No. 1 at 3, 5 (capitalization altered). Black states that for an unspecified time after the incident, his "rectum was in so much pain [he] couldn't use the bathroom for days at a time." ECF No. 1 at 4 (capitalization altered).

Black reported these actions to Foxwell, and a Prison Rape Elimination Act ("PREA")[6] investigation was convened. Black claims that following his PREA claim and complaints against Clayton and Arndt for their alleged actions during the strip search, Christopher and other officers, not named as Defendants here, began to retaliate against him. ECF No. 1, p. 3. Black

---

[6]In 2003, Congress enacted the Prison Rape Elimination Act, 42 U.S.C. § 15601, to protect prisoners from sexual abuse or sexual assault.

6

alleges that despite being informed of the retaliatory actions by his staff, Warden Foxwell failed to correct the actions of his employees. ECF No. 13 at 1.

B. Defendants' Response

Defendants note that prior to placement in administrative segregation, inmates routinely are examined by medical staff. *See* ECF No. 27-4 at 9. Accordingly, after Clayton and Arndt removed Black from his cell and searched for contraband, they took him to the medical unit. There, Black informed staff that he wished to make a Prison Rape Elimination Act ("PREA") complaint against Clayton and Arndt based on the search. ECF No. 27-5 at 14. Black refused to make a written statement at that time. ECF No. 27-5 at 12. According to Nurse Amanda Morris, Black refused to be physically examined and appeared very agitated. ECF No. 27-4 at 13. Nonetheless, Black was "[c]leared by medical" for placement in administrative segregation. *Id.*

Defendants provide the following details concerning Black's medical care following the incident. On March 24, 2017, ten days after the alleged assault, a registered nurse saw Black. ECF No. 27-21 at 5. According to the appointment notes,

> The inmate states, "First the CO [corrections officer] took me out of my cell, told me to drop and squat. Then, he got me to move my nuts around and then told me to put my fingers in my mouth. The CO choked me out while the other CO shoved his fingers in my ass. This was unnecessary as I told him that I didn't have nothing.["] I/M [inmate] is agitated while discussing incident. . . . [N]o s/s [signs or symptoms of] injuries and I/M denies pain.

*Id.*

The nurse reported these claims to the psychology department, and a psychology associate met with Black later the same day. *Id.* at 6, 8. According to the psychology visit notes, Black

> reported that on 3/14/17 Lt. Clayton "and a partner" strip searched him and in the process he was sexually assaulted. He claimed that Lt. Clayton forced him to lean forward and then "stuck his hand up my rectum.["] Inmate reported feeling

7

> distress since and claims that he cannot sleep, he has nightmares and is fearful of everything involving the correctional officers. He also reported that he fears retaliation from officers, in particular in the form of his food being pois[on]ed or officers telling inmates that he is a "rat" which apparently placed him in harm[']s way from other inmates.

*Id.* at 8.

On March 29, 2017, Black had an appointment with a psychiatrist. *Id.* at 10. He reported that following the alleged assault, he had been depressed and suffered a "flash back from when I got shot and othe[r] bad experiences—if I hear handcuffs and keys. [C]onstantly paranoid they are trying to do something to me." *Id.* Black, who had taken psychotropic drugs in the past but had not done so in the preceding year, requested and was prescribed psychotropic medication at this visit. *Id.* at 10, 14. Black had several medical appointments in April 2017, but did not mention the strip-search incident during any of these appointments. *Id.* at 15-22. On June 11, 2017, he had a follow-up appointment with the psychiatrist and his medications were renewed. *Id.* at 25.

Defendants also address the investigation following the incident. On 2017, the day of the strip-search, prison staff reported Black's PREA complaint to the Department of Corrections' Internal Investigative Division (IID), which opened an investigation into the matter. ECF No. 27-4 at 9. The IID investigator collected and reviewed the serious incident report detailing the incident which included the statements of various officers taken on the date of the incident. ECF No. 27-8 at 8. The investigator summarized these reports as collectively stating "that neither officer touched Inmate Black during the strip search and the strip search was done in privacy." *Id.*

The IID investigator interviewed Black, Clayton, Arndt, Black's cellmate who was strip-searched immediately after Black, and other correctional officers who were working on the tier

8

on March 14, 2017. *Id.* at 7-10. Following the interviews, the IID investigator obtained written statements consistent with the interviews from all subjects except Black's cellmate (who refused to provide a written statement) and Arndt (who does not appear to have been asked by the investigator to provide a written statement). *Id.*

> In his statement to the IID investigator, Black stated that Clayton and his partner
>
> strip[p]ed me in the open then while strip[p]ing me I failed to do as he say and was then chocked [sic] while the officer stuck his hand in my butt thinking I had something I didn't then stated if I did what I was told that wouldn't have happened to me.

*Id.* at 23 (capitalization altered); *see also id.* at 7-8 (IID investigator's report stating that Black said substantially the same thing during investigator's interview with him).

In Clayton's statement to the IID investigator, he stated that the search occurred in "a corner on the upper dayroom, where a sanitation closet and water fountain are located," an area that Clayton reported is obstructed from view of the cells on the same tier, the officers patrolling the tier, and the control center. *Id.* at 42. Clayton described the search as follows:

> [I] instructed [Plaintiff] to pass each article [of clothing] to me over his right shoulder one at a time, where I took possession of them. I then in turn passed each article to Ofc. Arndt, who search[ed] each piece of clothing for contraband.
> . . .
> [After conducting a visual inspection of the front of Plaintiff's body,] I then instructed Inmate Black to turn back around, facing the wall and to raise his right foot to allow for a visual inspection for contraband. He then lowered that foot and I instructed him [to] raise his left foot to allow for a visual inspection for contraband. Once he lowered his left foot, I instructed Inmate Black to bend forward at the waist and with both hands, separate his buttocks to allow for a visual inspection of this area of his body. Inmate Black complied with all of the instructions and at the completion of the search was allowed to redress[.]

*Id.* at 43; *see also id.* at 9-10 (IID investigator's summary of interview). In Arndt's interview with the investigator, he stated "neither he nor Lt. Clayton ever touched Inmate Black's buttocks." *Id.* at 10.

9

The officers working on the tier at that time, two female officers and one male officer, told the IID investigator that they did not see the strip-search being performed. *Id.* at 9-10, 38, 40, 45. Black's cellmate, who was facing away from Black while Black was being searched, reported to the IID investigator that he did not see or hear anything unusual during the strip-search. *Id.* at 9. He also stated that, during his strip-search, he was not touched by either officer. *Id.*

On April 5, 2017, the IID investigator concluded that the investigation should be closed, stating: "[a]ll the witnesses, suspects and documentation were reviewed in this incident and there was no evidence uncovered to support Inmate Black's allegation that his strip search was improper and the officers touched his buttocks. Inmate Black's complaint lacks merit as reported." *Id.* at 11.

On March 20, 2017, while the IID investigation was pending, Black filed an Administrative Remedy Procedure (ARP) grievance about the strip-search, taking issue both with the alleged assault and with the public location of the strip search. ECF No. 27-18 at 1-2. The ARP coordinator dismissed the grievance on procedural grounds, stating that "[i]nmates may not seek to resolve a complaint through the ARP for PREA related issues." *Id.* at 1.

On March 18, 2017, Black sent a letter to Department of Corrections Commissioner Dayena Corcoran reporting that unnamed officers called him a snitch and failed to give him food. ECF No. 27-14 at 3. After an officer conducted an interview with Black, Warden Foxwell responded to Black's letter to Corcoran, stating "[a]fter a thorough investigation was completed it has been determined that there is no evidence that the custody staff has retaliated against you for filing a PREA claim." *Id.*

On April 5, 2017, Black filed ARP grievance number ECI-0876-17, in which he alleged that staff had been throwing out his outgoing and incoming mail. ECF No. 27-20.[7] In support of this allegation, the grievance noted that

> On 3-31-17 I got mail but I was in court[.] My cell mate advice [sic] me that I had mail now I notice that I am being retaliate on now I was told to have officer on the 8 to 4 shift call the mail room but they never call[.] Officer Christopher advised me he don't pass out mail. Now I am sure my out going and incoming mail has been get[t]ing thrown away[.] I['] ve sent letters to my family and lawyer and they never got the mail or I'm I [sic] get[t]ing their mail. I would like this to be looked into because I am a target at ECI[.] Today the officer would not take my A.R.P. so I[']ve made copies because they won't stop retaliating against me[.] I've done had my food played with[.] I've done had Officer Collins and Officer Christopher put bones out on me[.] These officers are all friends and I am being forced to live under these ruthless condition[s].

ECF No. 27-19 at 4; ECF No. 27-20 (capitalization altered).[8]

On April 6, 2017, Black complained to the Warden that Officers Hall and Christopher entered his cell, broke his glasses and threw his belongings on the floor in retaliation for a complaint that he made. ECF No. 14-1 at 1. Also on April 6, 2017, Black mailed a letter to Commissioner Corcoran claiming that prison officers failed to give him his mail. ECF No. 27-14 at 2. Warden Foxwell responded to the letter stating that Black did not receive the mail on the day in question because he was in court. *Id.*

In an APR grievance dated May 2, 2017, Black complained that commissary food was not held pending his release from segregation housing and Christopher and other officers refused to accept his ARP. ECF No. 11-6 at 2-3. On June 24, 2017, Black submitted ARP No. ECI 1642-17, complaining that Christopher had thrown away his mail. ECF No. 10-2.

---

[7] Plaintiff filed another grievance on the same date concerning missing transcripts. ECF No. 27-19. Because this grievance is unrelated to the allegations in Plaintiff's complaint, the Court does not address it further.

[8] These two pages were filed as part of different exhibits, but the content of these pages suggests that ECF No. 27-20 is the first page of Grievance ECI 0876-17 and ECF No. 27-19 at 4 is the second page of the same grievance.

## Analysis

A. <u>Eighth Amendment Claim</u>

Whether force used by prison officials was excessive under the Eighth Amendment is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Black's claim that Clayton and Arndt choked him and forcefully inserted their fingers into his rectum during a search presents a colorable claim of excessive force. Although Black's original Complaint was unsworn, he has since filed statements under penalty of perjury in support of his claim that he was assaulted during the strip search on March 14, 2017. *See* ECF No. 10-4; *see also* ECF No. 11 at 1; ECF No. 31-2 at 1. Black has also identified burdens that he has faced in attempting to provide evidence to support his claim. He has noted throughout this litigation that his repeated requests to review the video footage of the day room from March 14, 2017 have been ignored. ECF No. 10-3 at 3; ECF No. 10-4; ECF No. 11-2.

Defendants do not assert that the use of force described by Black was reasonable under the *Whitley* considerations. Rather, they deny it occurred and contend that Black's account "is refuted by the record." ECF No. 27-2 at 17. They cite the IID investigator's conclusions and point to Clayton and Arndt's statements to the IID investigator that they did not touch Black during the search. *Id.* Clayton and Arndt also rely on their affidavits to this Court in which they aver that their statements to the IID investigator were accurate and truthful. *Id.*; *see also* ECF Nos. 27-9, 27-10. Further, citing Black's medical exam on March 24, 2017, Defendants argue that "plaintiff's medical record shows that no injuries were found, and plaintiff made no complaint of pain regarding the incident which is inconsistent with plaintiff's version of events that Lt. Clayton forcefully and violently shoved his hand and/or fingers up his rectum during the strip search." ECF No. 27-2 at 17.

In cases where, as here, Defendants offer no justification for the alleged application of force or simply deny there was an application of force, there exists a genuine dispute of material fact regarding whether the force was applied maliciously precluding summary judgment. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, Clayton and Arndt are not entitled to summary judgment.

B. <u>Fourth Amendment Claim</u>

Courts have long recognized that needless exposure of inmates to others, particularly others of the opposite sex, during a strip search can violate the Fourth Amendment. *See Harris v. Miller*, 818 F.3d 49, 58-59; *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981); *see also Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (determination of whether a particular search violates the Fourth Amendment "requires a

balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted").

Black claims that Clayton and Arndt violated his Fourth Amendment rights by removing him from his cell to conduct a strip search in a public area where he might be visible to other inmates and female correctional officers. ECF No. 1 at 3. Black has supported this allegation with a statement under oath. ECF No. 31-2 at 2. He asserts that Clayton and Arndt unnecessarily moved him from the private location of his cell to this publicly viewable location for the purpose of humiliating him. *Id.* Clayton and Arndt fail to address this claim in their Motion. *See* ECF No. 27-1 at 16-17 (addressing only whether Clayton and Arndt used excessive force in conducting the search). Accordingly, to the motion for summary judgment is denied without prejudice on this claim.

C. Retaliation Claim

Next, Black asserts that Christopher retaliated against him for filing grievances regarding the strip-search. To state a First Amendment retaliation claim, a plaintiff must show: "(1) his speech was protected, (2) the alleged retaliatory action adversely affected his protected speech, and (3) a causal relationship between the protected speech and the retaliation." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (internal quotation marks omitted). A prisoner's grievance is protected speech under the *Raub* elements. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("[B]y alleging that he filed a grievance against [a prison official, Plaintiff] has sufficiently pleaded that he engaged in protected conduct."). "[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise

of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted).

Defendants do not dispute that Black's Complaint sufficiently alleges the elements of a retaliation claim. Rather, they contend that his "allegation is totally unfounded. Plaintiff has provided no proof whatsoever to support his allegations." ECF No. 27-2 at 21. Defendants note that Christopher has submitted an affidavit denying such retaliation, and that Black's "allegation is not supported by the record." *Id.*

This argument misrepresents the submissions to the Court. Black has indeed provided support for his allegations, both in the form of his own sworn statements to this effect as well as the sworn statements of other inmates. ECF Nos. 10-3 at 2; 10-5; 11-1. He has therefore put forth sufficient evidence that a jury might return a verdict in his favor. As noted, resolving matters of credibility as evidenced by the inconsistencies of competing sworn statements is not appropriate in the summary judgment stage. Accordingly, the Court will deny the Motion for Summary Judgment as to the retaliation claim against Christopher.

Finally, Black claims that Warden Foxwell "has been made aware of all forms of harassment and illegal retaliation that has been done to the Plaintiff but has refused to end Plaintiff['s] exposure to harassment or illegal retaliation now due to deliberate indifference to an unreasonable risk of serious harm." ECF No. 13 at 1 (capitalization altered). Although Black frames his claim against Foxwell as deliberate indifference to serious harm, it is more accurately construed a claim of supervisory liability with regard to the alleged retaliatory actions taken against Black. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary

15

principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

In the instant case, there is ample evidence that Foxwell knew of Black's claims of Christopher's retaliatory actions. However, Black's claim fails on the second element. The record establishes that Foxwell investigated Black's allegations but, based on that investigation, believed the allegations were unfounded. *See* ECF No. 27-14 at 2-4. Black does not allege that Foxwell's investigation amounted to an inadequate response, nor does he otherwise point to some additional action that Foxwell should have taken. Instead, Black only takes issue with the ultimate conclusion of Foxwell's investigation that Black's claims were unfounded. An incorrect conclusion to an adequate investigation does not amount to a constitutional injury. Accordingly, Foxwell is entitled to summary judgment.

## Conclusion

Accordingly, the Court shall grant the Defendants' Motion to Dismiss as to ECI, and grant the Defendants' alternative Motion for Summary Judgment as to Foxwell. The Court will

deny the Motion as to Defendants Clayton, Arndt, and Christopher. Black shall be appointed counsel, who will promptly confer with Defendants' counsel regarding mutually agreeable discovery deadlines and anticipated length of trial. A separate Order follows.

March 19, 2017

/s/ Richard D. Bennett
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE